**Mary Logsdon, Widow of Vaughn LOGSDON, Petitioner,**

v.

**DIRECTOR, OWCP, U.S. DEPARTMENT OF LABOR, Respondent.**

No. 87–2649.

United States Court of Appeals, Eighth Circuit.

Submitted May 13, 1988.

Decided Aug. 5, 1988.

I. John Rossi, Des Moines, Iowa, for petitioner.

Michael J. Rutledge, Washington, D.C., for respondent.

Before McMILLIAN, JOHN R. GIBSON, and MAGILL, Circuit Judges.

PER CURIAM.

Mary Logsdon, on behalf of herself and her deceased husband Vaughn, seeks review of the order of the United States Department of Labor Benefits Review Board (BRB) denying her survivor's claim and her deceased husband's claim for black lung benefits. For reversal, petitioner argues, *inter alia*, that the Administrative Law Judge (ALJ) improperly discredited the miner's treating physician's medical reports. For the reasons discussed below, we agree and reverse and remand with directions that benefits be paid to petitioner.

Vaughn Logsdon (miner) filed a claim for benefits with the Social Security Administration (SSA) on August 9, 1972, under Part B of the Federal Coal Mine Health & Safety Act of 1969, 83 Stat. 742, (codified as amended at 30 U.S.C. §§ 901–45 (1982)) (Act). The claim was initially denied, and pursuant to the miner's request, referred to an ALJ for a formal hearing which was held on April 9, 1975.

The medical evidence presented at the hearing included numerous X-ray reports beginning in 1965, one of which had been interpreted by a board certified radiologist as showing simple pneumoconiosis; the results of a 1972 pulmonary function study (PFS); and medical reports from Dr. Jewett, the miner's treating physician, detailing the miner's monthly visits from 1972 through 1975, in which he diagnosed the presence of chronic obstructive lung disease.

Employment records introduced included an itemized statement of the miner's earnings based on his social security number, statements by co-workers verifying the miner's employment in the coal mines, and a statement prepared by the miner listing his employment record from September 1931 through December 1968.

Although the ALJ noted the miner's "obvious loss of lung capacity," he found a "significant question remaining as to the actual cause of his symptoms." Because the employment records indicated that the miner had only approximately six and one-half years of coal mine employment, the ALJ concluded that the miner was not entitled to the applicable statutory and regulatory presumptions as to the cause of his decreased lung capacity. *See* 30 U.S.C. § 921; 20 C.F.R. § 410.416. The ALJ denied the miner's claim and the denial was affirmed by the claims reviewing office on October 29, 1975.

On April 1, 1978, pursuant to the 1977 Amendments to the Act,[1] the miner elected to have the SSA review his claim. On January 10, 1979, he died. Petitioner thereafter filed her survivor's claim, and both claims were forwarded to the Department of Labor (DOL) for further consideration. The claims were denied, and at petitioner's request, a formal hearing was held on April 17, 1985.

Although both the miner's claim and petitioner's claim were presented, the ALJ adjudicated only petitioner's claim. Because her claim was filed after April 1, 1980, the ALJ considered it under the Part 718 regulations. The ALJ found that although the testimony and affidavits established over ten years of coal mine employment, petitioner did not establish that the miner suffered from pneumoconiosis at the time of his death, nor did she establish the require-

---

1. The Black Lung Benefits Reform Act of 1977, Pub.L.No. 95–239, 92 Stat. 95 (1978).

ments necessary for invoking the presumption of the miner's pneumoconiosis under 20 C.F.R. § 718.202(a)(4) because, although Dr. Jewett diagnosed pneumoconiosis, the PFS and X–ray report upon which he relied were unreliable and therefore his was not a "reasoned medical judgment."

The BRB affirmed the ALJ's decision regarding petitioner's claim. Although noting that the ALJ erred in not considering the miner's claim under the Part 727 regulations, the BRB concluded that under any of the regulations (Parts 410, 718, or 727), the evidence was insufficient to establish disabling pneumoconiosis. We disagree and conclude that the miner was entitled to benefits under the Part 727 regulations.[2]

■ The scope of review of an ALJ's decision is limited. If adequately supported by substantial evidence and not inconsistent with the law, the ALJ's determination is conclusive and it is immaterial that the facts permit the drawing of diverse inferences. *Parker v. Director, Office of Workers' Comp. Programs*, 590 F.2d 748, 749 (8th Cir.1979). This court's role is to assure that the BRB properly adhered to its standard of review, which requires an examination of the ALJ's factual determinations and the record. *Hon v. Director, Office of Workers' Comp. Programs*, 699 F.2d 441, 444 (8th Cir.1983).

Regulations promulgated pursuant to the Act provide that in cases where the miner has worked ten years or more in the coal mines, the presence of disabling pneumoconiosis will be presumed if the claimant presents medical evidence, such as the "documented opinion of a physician exercising reasoned medical judgment" diagnosing a totally disabling respiratory or pulmonary impairment. *See* 20 C.F.R. § 727.203(a)(4). The ALJ discredited Dr. Jewett's medical report because in making his conclusions of disability, the doctor relied in part on an invalid PFS and an X–ray interpretation at odds with the weight of X–ray evidence of record.

The determination whether a physician's report is sufficiently documented and reasoned is essentially a credibility matter and is for the finder of fact to decide. *Phillips v. Director, Office of Workers' Comp. Programs*, 768 F.2d 982, 984 (8th Cir.1985). However, in examining the validity of a medical opinion the fact finder must view it "in light of the studies conducted and the objective indications upon which the medical opinion or conclusion is based." *Ware v. Director, Office of Workers' Comp. Programs*, 814 F.2d 514, 516 (8th Cir.1987) (citation omitted). Moreover, the fact finder may not "use the studies to form his or her own medical opinion and to substitute that opinion for the opinion of an expert." *Id.*

■ The ALJ discredited the report in part on the grounds that Dr. Jewett relied on an invalid PFS. This conclusion is contradicted by the record which indicates that Dr. Jewett believed that the PFS results were less than accurate. Moreover, although the test was performed in 1972, it was not until 1973, after he had been treating the miner for one year, that Dr. Jewett first concluded that the miner was suffering from chronic obstructive lung disease. Hospital records and medical notes by Dr. Jewett covering the period January 30, 1971, to January 20, 1975, detail his extensive treatment of the miner. He saw the miner on an average of once a month, and often two or three times a month. The doctor concluded that the miner was a pulmonary, as well as a cardiac, invalid, and in a letter dated March 13, 1985, noted that he believed the miner's pulmonary impairment was "secondary to his work in the coal mines."

■ We have carefully reviewed the record and conclude that, when viewed in the context of the doctor's extensive and documented treatment of the miner, Dr. Jewett's reports qualify as a reasoned medical opinion under 20 C.F.R. § 727.203(a)(4). We note that the 20 C.F.R. § 727.203(a)(4) presumption of disability can be invoked only by establishing the

2. Because an award of benefits on the miner's claim automatically entitles petitioner to bene-

fits under 20 C.F.R. § 725.212, we limit this discussion to the deceased miner's claim.

qualifying facts by a preponderance of the evidence. *See Mullins Coal Co. v. Director, Office of Workers' Comp. Programs,* — U.S. —, 108 S.Ct. 427, 433–441 & n. 35, 98 L.Ed.2d 450 (1987). However, in this case the record contains no inconsistencies or contradictory physicians' reports, *cf. Brazzalle v. Director, Office of Workers' Comp. Programs,* 803 F.2d 934, 936–37 (8th Cir.1986); *Phillips,* 768 F.2d at 984–85, and although the X–ray reports do not indicate the presence of pneumoconiosis, this alone does not establish that the miner did not suffer from the disease. *See Bozwich v. Mathews,* 558 F.2d 475, 479–80 (8th Cir.1977). Accordingly, the evidence is sufficient to entitle the deceased miner to the rebuttable presumption of total disability due to pneumoconiosis under 20 C.F.R. § 727.203(a)(4). *See Id.* at 480.

Once this presumption is invoked the burden shifts to the Director. In this case the Director could rebut the presumption by showing under 20 C.F.R. § 727.203(b)(3) that the "total disability or death of the miner did not arise in whole or in part out of coal mine employment," or that the miner did not have pneumoconiosis under 20 C.F.R. § 727.203(b)(4).

Under 20 C.F.R. § 727.203(b)(3) the Director must disprove any causal relationship between a miner's disability or death and a respiratory ailment arising from coal mine employment. *See Consolidation Coal Co. v. Smith,* 837 F.2d 321, 323 (8th Cir.1988). At the 1975 hearing, the ALJ concluded that the miner's loss of lung capacity was due primarily to his extensive employment in the rock quarries, which began in 1941, and not to his coal mine employment, the bulk of which occurred in and before 1941. However, the miner's employment records indicate the opposite. The evidence established that the miner worked six years and eight months in the coal mines prior to 1941, and eight years and eleven months after 1941, and that the "quarry" work was in fact strip mining which entails blasting the rock away to expose the coal, and then mining the coal. The record also indicates that the miner suffered symptoms of the disease as early as 1942.

Therefore, the evidence falls short of disproving any causal relationship between the miner's disability and his coal mine employment. Moreover, for the reasons discussed above, we find that the Director has presented insufficient evidence to rebut the presumption that the miner was suffering from pneumoconiosis as required under 20 C.F.R. § 272.203(b)(4).

Accordingly, we reverse and remand for the payment of benefits to petitioner.