Peter KOWALCHICK, Petitioner,

v.

DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS, UNIT-
ED STATES DEPARTMENT OF LA-
BOR, Respondent.

No. 89–3504.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit Rule 12(6)
Jan. 8, 1990.

Decided Jan. 12, 1990.

Maureen Hogan Krueger, Meadowbrook, Pa., for petitioner.

Robert P. Davis, Sol. of Labor, Donald S. Shire, Associate Sol., Washington, D.C., for Black Lung Benefits.

Michael J. Denney, for Appellate Litigation.

Michelle S. Gerdano, U.S. Dept. of Labor, Office of the Sol., Washington, D.C., for Director, Office of Workers' Compensation Programs.

Before GIBBONS, Chief Judge,
SCIRICA, Circuit Judge and
WALDMAN, District Judge.[*]

## OPINION OF THE COURT

GIBBONS, Chief Judge:

Peter Kowalchick petitions for review of a final decision of the Benefits Review Board of the United States Department of Labor, denying him benefits under the Black Lung Benefits Act, 30 U.S.C.A. § 932(a) (West 1986). We will reverse the decision of the Benefits Review Board and direct that benefits be awarded.

### I.

This case has a lengthy procedural history. Kowalchick filed for disability benefits pursuant to the Black Lung Benefits Act, 30 U.S.C.A. §§ 901–945 (West 1986) ("the Act") on May 30, 1973. The Social Security Administration ("SSA") denied his claim in January 1974, and again upon re-examination in February 21, 1974. Kowalchick requested review of his claim by filing an election card pursuant to 30 U.S.C.A. § 945(a)(1)(A), but was again denied benefits. The claim was then referred to the Department of Labor ("DOL") pursuant to 30 U.S.C.A. 945(a)(2)(B)(i).

Kowalchick filed a second application for benefits in December 1981, which merged with his prior application pursuant to 20 C.F.R. § 725.309(d). The DOL denied the claim in November 1982, and Kowalchick subsequently requested a preliminary conference and formal hearing in December 1982. The preliminary conference was held in February 1983; benefits were again denied. A formal hearing was held in October 1986. In February 1987, the Administrative Law Judge ("ALJ") who heard the case issued a Decision and Order denying benefits once again.

Kowalchick filed a timely appeal to the Benefits Review Board ("the Board"). The respondent, the Director of the Office of Workers' Compensation Programs, United States Department of Labor ("the Director"; in case citations, "Director, OWCP") conceded that the ALJ erred in considering certain x-ray evidence and moved before the Board for a remand so that the ALJ could reconsider the evidence minus the inadmissible x-rays. The Board denied that motion and affirmed the ALJ's decision in May 1989. Kowalchick petitioned this court for review, pursuant to 30 U.S.C.A. § 931(a), arguing that he should be awarded benefits.

The Director concedes that the Board erred in affirming the ALJ's denial of benefits "in light of clear ALJ error", (Brief for Respondent at 11), but argues that the case should be remanded for the ALJ to make further factual findings.

### II.

It is not disputed that Kowalchick's claim should be considered under the interim presumption of disability set forth in 20 C.F.R. § 727.203 ("section 727.203"), which provides that a miner who engaged in at least ten years of coal mine employment is presumed to be totally disabled due to pneumoconiosis if he can demonstrate that he meets one of four medical requirements. 20 C.F.R. § 727.203(a) (1989). It is also undisputed that Kowalchick did have at least ten years of coal mine employment.

The three medical requirements relevant to this case are:

---

[*] Hon. Jay C. Waldman, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

(1) A chest roentgenogram (X-ray), biopsy, or autopsy [which] establishes that existence of pneumoconiosis (see § 410.428 of this title);

(2) Ventilatory studies [which] establish the presence of a chronic respiratory or pulmonary disease (which meets the requirements for duration in § 410.412(a)(2) of this title) as demonstrated by values which are equal to or less than.... [for an individual of Kowalchick's height, 69 inches, an FEV1 (forced expiratory volume in one second) value of 2.4 or less, and an MVV (maximum voluntary ventilation) value of 96 or less];

\* \* \* \* \* \*

(4) Other medical evidence, including the documented opinion of a physician exercising reasoned medical judgment, [which] establishes the presence of a totally disabling respiratory or pulmonary impairment.

20 C.F.R. § 727.203(a) (1989).[1]

Section 410.428 specifies various classifications of x-rays which qualify to show the existence of pneumoconiosis. Section 410.-412(a)(2) provides that a miner will be considered totally disabled by pneumoconiosis if "[h]is impairment can be expected to result in death, or has lasted or can be

expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 410.412(a)(2) (1989).

The presumption of disability may be rebutted if it can be shown that the individual is, or is capable of, performing his usual coal mine work, that the individual's disability is not in any way related to coal mine employment, or that the individual does not have pneumoconiosis.[2]

The medical tests introduced into evidence have varied results. Two x-rays in 1982 were read by Dr. J.E. Conrad, a board certified radiologist, to reveal lung opacities indicative of pneumoconiosis, with a profusion level of 1/0, the third highest of four possible classifications: one in August 1986 was read by Dr. K.N. Mathur, a "B-reader"[3], to reveal opacities with a level of 2/1, the second highest of the four classifications. It seems undisputed that these three positive x-rays meet the requirements of section 410.128 and so qualify to invoke the presumption of disability under section 707.203(a)(1). One x-ray in 1973, one in 1979 which was read by two doctors of whom one was a "B-reader", and one in April 1986 which was also read by two doctors one of whom was also a "B-reader", were all read to reveal no opacities.[4]

1. Section 727.203(a)(3) specifies results of blood gas tests which will invoke the section's presumption of disability. None of Kowalchick's blood gas tests qualified.

2. 20 C.F.R. § 727.203(b) provides:

The presumption in paragraph (a) of this section shall be rebutted if:

(1) The evidence establishes that the individual is, in fact, doing his usual coal mine work ...; or

(2) In light of all relevant evidence it is established that the individual is able to do his usual coal mine work or comparable and gainful work ...; or

(3) The evidence establishes that the total disability or death of the miner did not arise in whole or in part out of coal mine employment; or

(4) The evidence establishes that the miner does not, or did not, have pneumoconiosis.

3. Physicians can be certified as "A" (first) or "B" (final) readers according to their expertise in reading x-rays of miners for evidence of pneumoconiosis. "B" is the higher classification. See, *Alabama By-Products Corp. v. Killingsworth*, 733 F.2d 1511, 1513 n. 4 (11th Cir.1984).

4. The following x-ray interpretations were admitted into evidence:

| Date of X-Ray | Reading Physician/ Qualifications* | Conclusion |
|---|---|---|
| 8/1/73 | Dr. C.C. Barclay | 0 pneumoconiosis |
| 3/21/79 | Dr. N.M. Wall | 0/0 |
| 3/21/79 | Dr. W.S. Cole/ BCR, B-reader | 0/0 |
| 1/21/82 | Dr. J.E. Conrad/BCR | 1/0 p |
| 8/25/82 | " | 1/0 |
| 4/7/86 | Dr. W.R. Bohnenblust | 0 pneumoconiosis |
| 4/7/86 | Dr. R. Greene/BCR B-reader | 0/0 |
| 8/27/86 | Dr. K.N. Mathur/ BCR, B-reader | 2/1 |

The pulmonary function tests performed on Kowalchick also produced varied results. One test in 1973, which was later validated, did not reveal results indicative of pneumoconiosis according to the regulations. Two test performed in March 1979 and April 1982, the first by Dr. Norman Wall and the second unattributed, produced FEV1 and MVV values which met the requirements of section 727.203(a)(2), but these tests were not credited by the ALJ, apparently because they did not show conclusively that Kowalchick had used sufficient effort in taking the tests. An August 1982 test administered by Dr. Soli Tavaria showed an FEV1 value of 2.09, which was low enough to qualify under section 727.203(a)(2), but the test did not indicate an MVV value. A test performed in April of 1986 by Dr. Edward Cubler showed a qualifying FEV1 value of 2.4, but produced an MVV value of 96.7, seven-tenths of a point too high to qualify. A final test performed in August 1986 by Dr. Raymond Kraynak revealed an FEV1 value of 1.46, and an MVV value of 40, both qualifying values. These last three tests were apparently all validated.[5]

The record also includes the reports of a number of doctors. Dr. Wall examined Kowalchick in March 1979 and, on the basis of a physical examination, a chest x-ray, an electrocardiogram, and blood gas and pulmonary function studies, stated that, "there is no indication that this man is disabled on the basis of coal worker's pneumoconiosis." (App. 40a).

Dr. Tavaria examined Kowalchick in August 1982 and, based on his pulmonary function and blood gas studies, diagnosed chronic obstructive pulmonary disease related to dust exposure. He assessed Kowalchick's limitations as "walking, 100 feet; climbing, 10 steps; lifting, 20 lbs.; carrying, none". (App. 43a).

Dr. Cubler examined Kowalchick in April 1986. Based on his physical examination, chest x-ray, pulmonary function and blood gas studies, he concluded that Kowalchick "does not have any disability due to pneumonoconiosis or obstructive lung disease as the result of hazardous occupational exposure". (App. 49a). Dr. Cubler, however, listed Kowalchick's limitations in a section of the report labelled "medical assessment" as walking, "about two blocks"; climbing, "must take his time"; lifting, "0"; carrying, "0". (App. 47a).

Re-readings of the January 21, 1982 and August 25, 1982 x-rays were inadmissible under 30 U.S.C.A. § 923(b) (West 1986).

\* "BCR" means that a physician is Board-certified in radiology. "B-reader" means that a physician has a recognized proficiency in interpreting chest x-rays for the existence of pneumoconiosis.

5. The results of the pulmonary function tests are as follows:

| Date | Age | Height | FEV1 | MVV | Effort | Physician |
|------|-----|--------|------|-----|--------|-----------|
| 6/29/73 | 57 | 68–½" | 3.0 | 88 | Good | Pitt |
| 3/21/79 | 63 | 69" | 1.5 | 68.66 | Fair | Wall |

after administration of bronchodilator:
2.1   61.99

Results of this test were invalidated because "Dr.'s comments make test results an unreliable indicator. Repeat study with strictest attention to claimant's effort, if needed."

| 4/29/82 | 66 | 5'9" | 1.4 | 61.4 | Excellent | ? |

after administration of bronchodilator:
1.02   48.4

Results of this test were invalidated because "[t]hree FEV tracings representing maximum effort are not available."

| 8/25/82 | 67 | 69" | 2.09 | ? | Good | Tavaria |
| 4/7/86 | 70 | 69" | 2.4 | 96.7 | Good | Cubler |
| 8/27/86 | 71 | 69" | 1.46 | 40 | Good | Kraynak |

Dr. Kraynak examined Kowalchick in August, 1986. After he performed a chest x-ray and pulmonary function study, he stated that "it is my professional opinion that [Kowalchick] is permanently and totally disabled, due to anthracosilicosis contracted during his employment in the anthracite coal industry." (App. 54a).

### III.

The ALJ considered Kowalchick's application for benefits under section 727.203, but decided that Kowalchick failed to show any of the medical requirements necessary to invoke the presumption of disability under that section. He stated that Kowalchick was not entitled to the presumption based on x-ray evidence under section 727.-203(a)(1) because, "[o]f the eight admissible x-rays entered into evidence three are positive for pneumoconiosis one by a "B" reader; the other five are negative, two by "B" readers. Two of the positive readings have alternative negative readings." (ALJ opinion at 4; App. 11a). Earlier in his opinion, however, the ALJ stated that both the negative re-readings of Kowalchick's x-rays were inadmissible. (ALJ opinion at 2 nn. 3 & 4; App. 9a).

The ALJ also found that Kowalchick was not entitled to the presumption based on pulmonary function tests under section 727.203(a)(2). The ALJ noted that the pulmonary function test administered by Dr. Wall in 1979 and the unattributed test in 1982 were rejected by reviewing physicians, and that the August 1982 test by Dr. Tavaria did not have complete results. The judge stated that the two unaccepted tests, as well as the most recent test in the record, that of Dr. Kraynak administered in August 1986, are "so inconsistent with Dr. Cubler's most recent study [the April 1986 test], that I find them not credible. A patient cannot show substantial higher test results than is his actual capacity." (ALJ's opinion at 4; App. 11a). The ALJ appears also to have relied on the 1973 test which showed an FEV1 result of 300 after administration of a bronchodilator to support his conclusion, and declared finally that Dr. Cubler's April 1986 test "is the most valid."

The ALJ went on to examine all of the medical evidence in order to determine whether or not Kowalchick could invoke the presumption of disability under section 727.203(a)(4). The ALJ determined that Kowalchick could not. The ALJ stated that Dr. Tavaria's report was "ambivalent" because the ALJ read the report as stating that Kowalchick was limited in his ability to lift and walk, but not in his ability to carry. He also stated that Dr. Tavaria "did not venture an opinion as to disability." The ALJ also decided to give Dr. Kraynak's report "substantially less weight" because he had found Dr. Kraynak's pulmonary function tests "not valid".

The ALJ found Dr. Cubler's report, which stated that Kowalchick showed no evidence of pneumoconiosis or pulmonary impairment, "reasonable and based on objective medical evidence." The ALJ stated that, because Kowalchick was seventy-one years old when Dr. Cubler performed his pulmonary function test, the results of the pulmonary function test were not inconsistent with Dr. Cubler's opinion of no respiratory impairment.

In addition, the ALJ found that, even if Kowalchick was entitled to the presumption of section 727.203, "I would find that it is rebutted for the reasons and analysis stated, *supra.*"

### IV.

The Board is bound by an ALJ's findings of fact if they are supported by substantial evidence. *Oravitz v. Director OWCP*, 843 F.2d 738, 739 (3d Cir.1988) (citing *Kertesz v. Crescent Hills Coal Co.*, 788 F.2d 158, 162 (3d Cir.1986)). Our review of the Board's decision is limited to a determination of whether an error of law has been committed and whether the Board has adhered to its scope of review. *Id.* (citing *Kertesz* and *Old Ben Coal Co. v. Prewitt*, 755 F.2d 588, 589–90 (7th Cir. 1985)). In doing so, we "independently review the record 'and decide whether the ALJ's findings are supported by substantial evidence.'" *Kertesz*, 788 F.2d at 163 (quoting *Walker v. Universal Terminal & Stevedoring Corp.*, 645 F.2d 170, 172 (3d

Cir.1981)). "'Substantial evidence' has been defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir.1981) (quoting *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)).

■ Despite the limited nature of this court's role, we are mindful that the black lung entitlement program is to be liberally construed. *See, e.g., Bozwich v. Mathews*, 558 F.2d 475, 479 (8th Cir.1977) (discussing legislative history and stating that program should be "liberally construed in favor of the miners to insure compensation in worthy cases despite the extreme difficulty of proving the existence of clinically certain medical evidence"). The Senate Report accompanying 1972 amendments to the black lung program noted: "The Black Lung Benefits Act of 1972 is intended to be a remedial law.... In the absence of definitive medical conclusions there is a clear need to resolve doubts in favor of the disabled miner." S.Rep. No. 743, 92d Cong., 2d Sess. (1972), *reprinted in* 1972 U.S.Code Cong. & Admin.News 2305, 2315.[6]

The Director acknowledges that the ALJ erroneously considered two negative re-readings of positive x-rays. Consideration of such re-readings is barred by the Act, 30 U.S.C.A. § 923(b) (West 1986). The Director also concedes that the Board erroneously ignored the Director's concession and found the re-readings admissible. Further, the Director acknowledges that the ALJ's characterization of Dr. Tavaria's report as "ambivalent" was erroneous and that, contrary to the ALJ's assertion, the report did assess the extent of Kowalchick's disability.

The Director nevertheless argues that remand is required for three purposes: i) to allow the ALJ to reconsider whether x-ray evidence minus the two inadmissible re-readings is sufficient to invoke the presumption of disability under section 707.203(a)(1); ii) to weigh again the opinion of

Dr. Tavaria against that of Dr. Cubler, under section 707.203(a)(4), and iii) to allow the ALJ to reconsider whether the presumption, if invoked, has been rebutted under section 727.203(b). The Director argues that the ALJ's weighing of the pulmonary function tests under section 707.203(a)(2) is supported by substantial evidence and is in accordance with the law.

In arguing for remand, the Director relies on *Mullins Coal Co. v. Director, OWCP*, 484 U.S. 135, 108 S.Ct. 427, 98 L.Ed.2d 450 (1987), in which the Supreme Court held that, although a single item of qualifying medical evidence may invoke the presumption of disability under section 707.203, it does not necessarily do so if there is contradictory evidence in the record; rather, a claimant must establish one of the qualifying facts by a preponderance of the evidence.

Kowalchick argues that remand is unnecessary because the medical evidence of record "unequivocally establishes that [Kowalchick] has invoked the interim presumption and that the director is precluded from establishing rebuttal under any method." (Reply Brief of Petitioner at 1).

We will examine the ALJ's consideration of each of the statutory provisions separately.

*The ALJ's Consideration of X–Ray Evidence Under Section 707.203(a)(1):*

■ The ALJ's determination that Kowalchick was not entitled to the presumption of disability based on x-ray evidence under section 707.203(a)(1) is clearly not supported by substantial evidence. The ALJ stated that there were eight admissible x-rays, three of them positive (with one of them read by a "B-reader") and five negative (with two of them read by "B-readers"). In fact, there were only six x-rays in evidence, three of which were read positive, the most recent one by a "B-reader" and the other two by a board certified radiologist. Three other x-rays, two of them from

---

**6.** The Act was amended in 1972, 1978 and 1981. The 1972 and 1978 amendments liberalized the program. The 1981 amendments were restrictive but apply only to claims filed after January, 1982. *See Newman v. Director, OWCP,* 745 F.2d 1162, 1164 n. 2 (8th Cir.1984).

1973 and 1979, were read negative, two by "B-readers".

As already stated, the ALJ based his finding at least in part on the two inadmissible re-readings of positive x-rays, despite having first determined that they were inadmissible. Thus, as the Director does not contest, the ALJ's findings were based on an incorrect reading of the evidence. Nonetheless, the Director relies on *Mullins* to assert that the ALJ must be afforded another opportunity to weigh the x-ray evidence of record without considering the two re-readings.

■ The evidence weighs strongly in favor of a finding that the presumption has been invoked—so strongly, in fact, that we are confident in holding that this result is compelled. Three of Kowalchick's four latest x-rays were read to indicate pneumoconiosis, with the most recent x-ray—that of August 1986 which was read by a "B-reader"—showing a greater severity than the earlier positive ones. That the three earliest x-rays of record, dating from as far back as 1973 and 1979, were read negative is not inconsistent with the progressive nature of pneumoconiosis. While it is true that an x-ray in April of 1986 was read negative by a "B-reader", the fact that this negative reading came after two positive x-rays markedly diminishes its evidentiary worth. As the Supreme Court stated in *Mullins*:

> [I]n weighing conflicting x-ray readings ALJs will undoubtedly keep in mind the character of the black lung disease:
>
> > Since pneumoconiosis is a progressive and irreversible disease, early negative x-ray readings are not inconsistent with significantly later positive readings.... This proposition is not applicable where the factual pattern is reversed. In a situation ... where the more recent x-ray evidence is negative and directly conflicting with earlier positive x-rays it may be weighed with less regard to timing in light of the recognized principle that negative x-ray readings are not a trustworthy indicator of the absence of the disease.

*Mullins,* 108 S.Ct. at 436 (quoting *Elkin v. Beth–Elkhorn Corp.,* 2 BLR 1–683, 1–686 (Ben.Rev.Bd.1979)).

Kowalchick relies on the "true doubt rule", under which equally probative but contradictory evidence in the record is to be resolved in the favor of the claimant. *Lessar v. C.F. & I. Steel Corp.,* 3 BLR 1–63, 1–68–1–69 (Ben.Rev.Bd.1981) and cases cited. He argues that the conflicting 1986 x-rays should be subject to this rule and thus the positive one should be controlling. The Director, on the other hand, argues that the x-ray evidence is not truly in equipoise, and thus not subject to the true doubt rule, because two of the negative readings but only one of the positive readings were performed by "B-readers"; and contends that the length of time between Kowalchick's last coal mining employment in 1957 and the first positive x-rays in 1982 weighs against crediting these x-rays.

We agree with Kowalchick. Because the most recent x-ray of record indicates the presence of pneumoconiosis which has worsened since two previous positive x-rays, and because, as the Supreme Court has indicated, one negative x-ray coming between three other positive x-rays is to be accorded less weight than the positive x-rays, the evidence here can only support a finding that Kowalchick has invoked the presumption of disability under section 707.203(a)(1) by a preponderance of the evidence—this is a case where "the record is so clear that under the correct standard the result is foreordained." *Caprini v. Director, OWCP,* 824 F.2d 283, 285 (3d Cir. 1987) (holding that remand is necessary where result is not foreordained by the record).

*The ALJ's Consideration of Pulmonary Function Test Evidence Under Section 707.203(a)(2):*

■ As we have determined that the presumption of disability must be invoked under section 707.203(a)(1), it is perhaps unnecessary to decide whether substantial evidence exists to support the ALJ's determination that the presumption was not invoked under section 707.203(a)(2). Nevertheless, because the pulmonary function

test evidence is relevant to the issue of rebuttal, we will examine the ALJ's consideration of this evidence.

Kowalchick contends that all of the pulmonary function tests ("PFTs") of record meet the total disability standard of section 707.203(a)(2). This, of course, is not strictly true. The test of June 1973 produced an FEV1 value over the statutory limit, although the MVV value fell within the statute. The test of April 1986 which, predictably, was the only one credited by the ALJ, produced a MVV value seven-tenths of a point over the statutory limit, although it resulted in a qualifying FEV1 value.[7]

The Director argues that the evidence supports the ALJ's determination that the most recent PFT, coming as it did only four months after the last one, produced disproportionately low results. The Director denies that the discrepancy between the two most recent tests should be resolved in Kowalchick's favor under the "true doubt" rule, as Kowalchick contends, because the ALJ determined that the two tests were not equally probative.

Once again we agree with Kowalchick. We do not hold unsupported the ALJ's decision not to credit two earlier tests as to which there was some doubt concerning Kowalchick's effort. Nevertheless, the fact that the only PFT result of record since 1979 which exceeded the statutory qualifying limits was only seven-tenths of a point above the limit seems to us to require a finding that the presumption has been invoked by a preponderance of the evidence under *Mullins*. The two most recent PFTs were performed four years after the prior test and within a short period of each other; they should have been viewed under the true doubt rule, especially considering that one of the results came close to qualifying. The evidence can only support the conclusion that the presumption of disabili-

ty was also invoked under section 727.-203(a)(2).

*The ALJ's Consideration of the Medical Evidence Under Section 727.203(a)(4):*

The ALJ's determination that Dr. Tavaria's report was "ambivalent" is not supported by substantial evidence. The doctor's report listed Kowalchick's limitations as "carrying, none" which the ALJ interpreted to mean that there was no limitation. In light of Dr. Tavaria's opinion that Kowalchick could only walk a distance of a hundred feet and lift twenty pounds, this interpretation is patently ludicrous and can only be viewed as a result-oriented misreading of the evidence. The Director acknowledges that the only reasonable reading of the report is that Kowalchick could do no carrying, and also concedes that Dr. Tavaria's assessment of Kowalchick's disabilities "constitutes a finding of total disability sufficient to invoke the interim presumption under subsection (a)(4)". (Brief for the Respondent at 19). This is clearly correct. Nevertheless, the Director contends that this case must be remanded for the ALJ once again to weigh the reports of Dr. Tavaria and Dr. Kraynak against that of Dr. Cubler.

Kowalchick argues that Dr. Cubler's opinion is internally inconsistent because he responded to a question asking for his assessment of Kowalchick's limitations by stating that Kowalchick could only walk two blocks, "must take his time" climbing stairs, and could not lift or carry at all, but also gave his opinion that Kowalchick did not have any respiratory impairment and could perform his previous coal mining activities. The Director attempts to explain this by stating that the doctor's assessment of Kowalchick's limitations must be a repetition of Kowalchick's own assertions, rather than the doctor's conclusion.

7. Kowalchick argues that this figure should be rounded downwards, which would bring it within the limits of the statutory requirement to invoke the presumption. The statute clearly provides, however, that values must be "equal to or less than" the specified values, which seems to preclude rounding figures downwards. *See Gutierrez v. Califano,* 612 F.2d 1247, 1249 (10th Cir.1979) (figures in statutory tables regarding blood gas tests "clearly ... constitute the boundaries of *ranges* of values" precluding any rounding downwards of test results) (emphasis in original); *Bolyard v. Peabody Coal,* 6 BLR 1–767, 1–769 – 1–770 (Ben.Rev.Bd.1984) (applying same reasoning to ventilatory studies).

■■■ An ALJ may disregard an assessment of a patient's limitations only if the ALJ can "identify a basis for a finding that listed limitations are the patient's rather than the doctor's conclusions." *Jordan v. Benefits Review Bd.*, 876 F.2d 1455, 1460–61 (11th Cir.1989). The mere fact that a report does not specify if the assessment is the doctor's or the claimant's is not a sufficient basis for rejecting the assessment. *Id.* In *Parsons v. Director, OWCP*, 6 Black Lung Rep. 1–272, 1–276–77 (Ben.Rev. Bd.1983), the Board held that the fact that a "medical assessment" portion of doctor's report consisted of a repetition of patient's symptoms, as related by the patient to the doctor in another section of the report, was a sufficient basis for the ALJ's finding that the assessment was a repetition of the patient's own conclusions. In this case, it is possible that the fact that Dr. Cubler later stated that Kowalchick had no respiratory impairment could be the basis for a finding that the listed limitations were Kowalchick's own statements. This is a question of fact which we may not resolve.

We need not resolve that question to decide this case, however. Dr. Tavaria and Dr. Kraynak both opined that Kowalchick was disabled due to pneumoconiosis; this, together with the fact that Dr. Kraynak's opinion is based on the most recent tests of record, both indicate that the presumption was also invoked under section 727.-203(a)(4). That section provides that "the documented opinion of a physician exercising reasoned medical judgment" may be used to invoke the presumption of disability. Even under the standard of *Mullins,* we believe that the evidence can only support the conclusion that Kowalchick has established the presumption by a preponderance of the evidence.

*Rebuttal Evidence Under Section 727.-203(b):*

The ALJ made alternative findings that even if the interim presumption was invoked, it would have been rebutted under sections 707.203(b)(2) and (b)(4), *supra* n. 2. Here again the Director concedes that the ALJ's conclusions were flawed: In finding rebuttal under subsection (b)(2), the ALJ erred in failing to consider *Oravitz v. Director, OWPC*, 843 F.2d 738 (3d Cir.1988), and in finding rebuttal under subsection (b)(4), the ALJ erred in considering the inadmissible re-readings of x-rays. The Director nevertheless contends that rebuttal could be found on remand.

In *Oravitz,* we held that the presumption under subsection (b)(2) may not be rebutted by evidence that a miner is not totally disabled due to pneumoconiosis, because "that provision is limited to proof demonstrating that the miner is suited for employment in the mines or a comparable position." 843 F.2d at 740. PFTs and a physician's opinion that a claimant is not totally disabled are not relevant to this section. *York v. Benefits Review Bd.*, 819 F.2d 134, 137 (6th Cir.1987).

In a recent case, we determined that a doctor's report that there were "no limitations" on a claimant's abilities which would prevent him from performing his last coal mining activities was insufficient to rebut the presumption when there was no indication that the doctor was aware of the claimant's coal mining duties. *Gonzales v. Director, OWCP*, 869 F.2d 776, 779–80 (3d Cir.1989).

■■■ As in *Gonzales,* in this case there is no evidence that Dr. Cubler knew any of the specific details of Kowalchick's previous coal mining employment. Especially considering that his report was ambiguous in that it contained a limited assessment of Kowalchick's abilities, but nevertheless concluded that he could perform his coal-mining duties, this report is insufficient to rebut the presumption of disability under subsection (b)(2).

The Director concedes that "should the ALJ find the presumption invoked under subsection (a)(1), the Director agrees with Kowalchick that Dr. Cubler's opinion (based on a negative chest x-ray) could not rebut the presumption under subsection (b)(4)." (Brief for the Respondent at 24). As we have determined that the evidence can only support a finding that the presumption was invoked under subsection (a)(1), Dr. Cubler's opinion cannot be used to rebut this presumption.

"Since the Black Lung Act should be liberally construed to assure widespread benefits to miners disabled by black lung disease, 'the party opposing an award of benefits must point to persuasive evidence' to rebut an interim presumption of disability.'" *Kertesz v. Crescent Hills Coal Co.,* 788 F.2d 158, 163 (3d Cir.1986) (quoting *Pavesi v. Director, OWCP,* 758 F.2d 956, 964–65 (3d Cir.1985)). This the Director has failed to do.[8]

### V.

If remand is not sought so that new evidence may be presented, and when "under the correct standard the result is foreordained", remand may be unnecessary. *Caprini v. Director OWCP,* 824 F.2d 283, 285 (3d Cir.1987). *See also, Kline v. Director, OWCP,* 877 F.2d 1175, 1181 (3d Cir.1989) (where evidentiary record was insufficient to establish rebuttal, and where nineteen years elapsed since filing of claim for benefits, remand for further proceedings was unwarranted); *Gonzales v. Director, OWCP,* 869 F.2d 776 (3d Cir.1989) (where Director did not rebut the interim presumption with substantial evidence, case remanded for award of benefits); *Logsdon v. Director, OWCP,* 853 F.2d 613 (8th Cir.1988) (where there was no contradictory evidence, doctor's diagnosis of pneumoconiosis required a finding that presumption had been triggered); *Sulyma v. Director, OWCP,* 827 F.2d 922, 924 (3d Cir.1987) (where evidence could not support Director's assertions, court's "own review of the record [is] sufficient ... so that further administrative review is unwarranted").

Thus, while it is true that, where a record can support conflicting inferences, this Court must remand a case for the ALJ to make findings of fact, in this case the record only supports one conclusion—that benefits must be awarded. Thus, no purpose would be served in remanding this case for further fact finding and we therefore direct that benefits be awarded from the appropriate commencement date.

---

8. The Director attempts to argue that rebuttal could be shown under subsection (a)(3). This argument was not presented to the Board, nor was rebuttal found under this section by the ALJ. We do not believe that rebuttal could be shown under this section on this record. Moreover, this court has "refused to consider an argument made by the Director on appeal that had not been presented to or considered by the Board." *Bernardo v. Director, OWCP,* 790 F.2d 351, 353 (3d Cir.1986) (citing *Director, OWCP v. North American Coal Corp.,* 626 F.2d 1137, 1143 (3d Cir.1980)).