**Lester WOLFGANG, Petitioner,**

v.

**KOCHER COAL COMPANY; Travelers Insurance Company Director, Office of Workers Compensation Programs, U.S. Department of Labor, Respondents.**

No. 02–2574.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Dec. 19, 2002.

Decided March 31, 2003.

Before NYGAARD, ALITO and RENDELL, Circuit Judges.

## OPINION OF THE COURT

### PER CURIAM.

Lester Wolfgang, a retired coal miner, petitions for review of an order of the Benefits Review Board of the U.S. Department of Labor ("the Board") refusing re-consideration of its decision affirming the denial by an administrative law judge ("ALJ") of Wolfgang's claim for benefits under the Black Lung Benefits Act, 30 U.S.C. § 901 et seq. ("the Act"). The Board's order ended 19 years of administrative proceedings.[1] The sole issue on appeal is whether Wolfgang met his burden of proving, on the basis of "a physician's documented and reasoned medical report,"[2] that pneumoconiosis was a "substantial contributor" to his total disability, as required under the Act and Department of Labor regulations.[3]

The reports of five physicians are relevant to this appeal. Wolfgang relies on the testimony of Drs. Matthew and Raymond Kraynak, his treating physicians, and a report written by Dr. John Simelaro, a specialist in pulmonary medicine who opined on the possible effects of Wolfgang's smoking history. Wolfgang's employer, the Kocher Coal Company, relies on reports from Dr. Thomas H. Dittman, a specialist in respiratory medicine who conducted a physical examination of Wolfgang on September 18, 1998, and Dr. Sander H. Levinson, a specialist in pulmonary medicine who reviewed a pulmonary function test ("PFT") that had been performed by Dr. R. Kraynak on January 8, 1998.

Dr. M. Kraynak has practiced family medicine since 1998 and is Board Certified in that area. *Id.* at 46. On February 10, 1999, Dr. Kraynak wrote that Wolfgang had complained to him of shortness of breath, among other symptoms, and that

---

1. Wolfgang filed his first request for benefits in 1983. His claim was denied, and he did not request a hearing before an ALJ. App. at 2. The instant duplicate claim was filed in 1986. *Id.* During the course of these proceedings, the ALJ issued a total of six decisions and the Board three. *Id.* at 145–46.

2. 20 C.F.R. § 718.204(c)(2) (2002).

3. The Act provides benefits to coal miners who are "totally disabled due to pneumoconi-osis." 30 U.S.C. § 901(a). In *Bonessa v. U.S. Steel Corp.*, 884 F.2d 726 (3d Cir.1989), we interpreted this phrase to mean that, in the case of a living miner claiming disability, pneumoconiosis was "a substantial contributor to the disability." *Id.* at 734. The phrase, a substantial contributor, has since been incorporated into the Department of Labor regulations. 20 C.F.R. § 718.204(c)(1) (2002).

physical examination had revealed wheezing and cyanotic lips. *Id.* 43. Dr. M. Kraynak noted Wolfgang's work and smoking histories and provided PFT data from November 11, 1998. *Id.* His single page report concludes, without intervening explanation, with his opinion that Wolfgang is "permanently disabled due to coal workers [sic] pneumoconiosis." *Id.* at 43. On March 31, 1999, Dr. M. Kraynak wrote a one and one-quarter page letter addressing the causal link between Wolfgang's smoking history and his pulmonary disability. *Id.* at 44–45. Dr. M. Kraynak opines: "[a]ssuming that the greatest smoking history was accurate, that [a] 25 pack year history could possibly give rise to mild obstructive pulmonary disease[,] [i]t would not give rise to severe obstructive components noted on the pulmonary function. Smoking would not give rise to the opacities noted in the x-ray." *Id.* at 44. He concludes, without further explanation, that "[i]t is clear that Mr. Wolfgang suffers from coal workers [sic] pneumoconiosis contracted during his employment in the anthracite coal industry and is totally and permanently disabled do [sic] to coal workers [sic] pneumoconiosis." *Id.*

Dr. R. Kraynak has practiced family medicine since 1984, though he is not Board Certified in that or any other area of medicine. *Id.* at 13. In a one-page letter, dated January 12, 1998, he writes that Wolfgang's condition had worsened during the time that he had been under his care. *Id.* at 12. He also reports the results of a PFT that he conducted on January 8, 1998. He concludes, without any explanation, that "Mr. Wolfgang is totally and permanently disabled due to his black lung disease. The smoking history would not give rise to the severe restrictive defect noted in the pulmonary function." *Id.* Dr. R. Kraynak also testified before the ALJ on March 12, 1999. Under direct examination, he stated that he disagreed

with Dr. Levinson's interpretation of the PFT that he had performed on January 8, 1998. *Id.* at 83. Dr. R. Kraynak further opined that he disagreed with the interpretation of PFT and blood gas studies offered by Dr. Dittman in his report of October 1, 1998. *Id.* at 85–86. Dr. R. Kraynak reiterated his opinion that "Wolfgang is totally and permanently disabled due to coal worker's pneumoconiosis contracted during his employment in the anthracite coal industry." *Id.* at 86.

Dr. Simelaro is the Chairman of the Department of Internal Medicine at the Philadelphia College of Osteopathic Medicine. *Id.* at 48. In his one and one-half page report of February 23, 1999, he lists Wolfgang's variously reported smoking histories. *Id.* at 47. He opines that a smoking history of 25 pack years would have caused obstruction, but "would not explain the heavy profusion of nodules in his lungs, only anthracosilocosis causes this." *Id.* at 48. He then concludes that Wolfgang's "anthracosilocosis played a more significant part in his disease than his cigarette smoking." *Id.* Dr. Simelaro did not conduct a physical examination.

Dr. Dittman is the Medical Director of the Respiratory Therapy Department of the Hazelton State General Hospital. *Id.* at 35. In his report of October, 1, 1998, which comprises four and one-half pages of text and eight pages of figures, Dr. Dittman presents the results of a comprehensive physical examination of Wolfgang that he conducted on September 18, 1998, which included PFTs and arterial blood tests. *Id.* at 20–32. Dr. Dittman also surveys Wolfgang's medical and work histories. *Id.* He concludes that "Wolfgang does not have coalworker's pneumoconiosis and is not physically impaired nor disabled on the basis of coalworker's pneumoconiosis." *Id.* at 23–24. On October 12, 1998, Dr. Dittman submitted another report in

which he discussed the etiology of Wolfgang's disability. *Id.* at 33–34. Dr. Dittman notes discrepancies between the results of different x-ray studies and the inconsistency and apparent unreliability of Wolfgang's PFT results. *Id.* at 33. Based on his assessment of Wolfgang's self-reported medical history, Dr. Dittman stated that "[i]t would be highly, highly unusual for someone with simple coalworker's pneumoconiosis to have symptoms arising and worsening approximately 7 years after his last employment in the anthracite mining industry." *Id.* at 34. Dr. Dittman concludes that the most likely origin of Mr. Wolfgang's physical impairment was bronchial asthma or emphysema. *Id.*

Dr. Sander L. Levinson is the Director of Pulmonary Laboratory and Respiratory Therapy at the Moses Taylor Hospital. *Id.* at 17. On March 31, 1998, he submitted, on a standard Department of Labor form, an assessment of the PFT studies conducted by Dr. R. Kraynak on January 8, 1998. *Id.* at 14–16. Dr. Levinson noted "excessive variability" and "poor effort." *Id.* at 16.

In his decision and order issued on July 21, 1999, the ALJ noted that Dr. Dittman's medical report of October 12, 1998, was "detailed, comprehensive[ ] and consider[ed] the Claimant's full medical history as it relates to the cause of his total disability[,]" that Dr. M. Kraynak's report contained "virtually no underlying objective evidence," and that Dr. Simelaro, though a "well qualified expert, did not address Dittman's rationale." *Id.* at 124–25. The ALJ denied Wolfgang's claim on the ground that he had failed to show that pneumoconiosis was the cause of his disability, and the ALJ explained that he had attached great weight to Dr. Dittman's opinion and that "Dr. Dittman's reasoning remains unrefuted in its logic." *Id.* at 124–25.

On August 18, 2000, the Board vacated the decision and order of the ALJ and remanded "for further consideration consistent with [its] opinion." *Id.* at 131. The Board noted that the ALJ had misidentified Dr. R. Kraynak as the author of a letter written by Dr. M. Kraynak on March 31, 1999; had not referred to a medical opinion written by Dr. R. Kraynak on January 12, 1998; had improperly characterized reports written by Drs. M. Kraynak and Simelaro as "conclusory and unsupported by objective medical evidence of record"; and had used a medical opinion submitted by Dr. Dittman as a "standard by which to weigh the evidence." *Id.* at 130.

On remand, in a decision and order issued on November 13, 2000, the ALJ noted the extreme brevity and lack of reasoning in Dr. M. Kraynak's letter of March 31, 1999. *Id.* at 135. The ALJ noted that the absence of explanation in Dr. R. Kraynak's letter of January 12, 1998. *Id.* at 134–35. The ALJ explained that he had attached little weight to statements made by Dr. R. Kraynak during his deposition, in which he had discounted the results of Dr. Dittman's PFT studies, because of Dr. Ditmman's superior credentials and "expertise in the interpretation of his own study results." *Id.* at 135. The ALJ then addressed Dr. Simelaro's report, noting that it referred to x-rays, a form of objective medical evidence that was not relevant to the inquiry, and was devoid of any reasoning. *Id.* at 134. The ALJ reiterated his finding that Dr. Dittman's report of October 1, 1998, was "detailed, comprehensive[ ] and considered the full medical history as it related to the cause of disability." *Id.* at 134. The ALJ concluded that the reports of Drs. M. and R. Kraynak and Dr. Simelaro were "not sufficiently well rationalized to receive significant weight to satisfy the Claimant's burden of persua-

sion." *Id.* at 135. On January 31, 2002, the Board affirmed the decision of the ALJ. *Id.* at 139–44. This appeal followed the Board's rejection of Wolfgang's motion for reconsideration on May 8, 2002. *Id.* at 145.

We review the Board's decision for errors of law and to ensure that the Board has adhered to its scope of review. *Oravitz v. Director, OWCP,* 843 F.2d 738, 739 (3d Cir.1988). The Board is bound by the ALJ's factual findings if they are supported by substantial evidence. *Id.* Accordingly, we conduct an independent review of the record to determine whether the ALJ's findings are supported by substantial evidence. *Kowalchick v. Director, OWCP,* 893 F.2d 615, 620 (3d Cir.1990). Substantial evidence is "more than a mere scintilla" and of such relevance that "a reasonable mind might accept as adequate to support a conclusion." *Id.* In reviewing a petition for modification, "[a]t a minimum, the [ALJ] must review all evidence of record—any new evidence submitted in support of modification, as well as the evidence previously of record—and 'further reflect' on whether any mistakes [of] fact were made in the previous adjudication of the case." *Keating v. Director, OWCP,* 71 F.3d 1118, 1123 (3d Cir.1995).

In order to establish entitlement to benefits a claimant must prove that he is "totally disabled due to pneumoconiosis." 20 C.F.R. § 718.204(a) (2002). A claimant is considered totally disabled due to pneumoconiosis if "pneumoconiosis is a substantial contributing cause to the miner's totally disabling respiratory or pulmo-

nary impairment." *Id.* § (c)(1). Furthermore, "the cause or causes of a [living] miner's total disability shall be established by means of a physician's documented and reasoned medical report." *Id.* § (c)(2).

Because we determine that the Board, in its decision of January 31, 2002, made no error of law and adhered to its scope of review,[4] *Oravitz,* 843 F.2d at 739, we conduct an independent review of the record to determine whether the findings of the ALJ were supported by substantial evidence. *Kowalchick,* 893 F.2d at 620.

Taken together, the ALJ's opinions of July 21, 1999 and August 18, 2000 constitute a "review [of] all evidence of record." *Keating,* 71 F.3d at 1123. We cannot fault the ALJ's finding that Dr. Dittman's reports are "detailed, comprehensive[ ] and consider[ ] the Claimant's full medical history as it relates to the cause of his total disability." *Id.* at 124–25, 134. We see no error in the ALJ's finding that the reports of Drs. M. and R. Kraynak and Dr. Simelaro are marked by brevity and an almost complete lack of reasoning. *Id.* at 134–35. We cannot say, therefore, that the ALJ acted unreasonably when he attached greater weight to the conclusion reached by Dr. Dittman. In particular, the ALJ's decision to rely on Dr. Dittman's interpretation of his own PFT tests, despite Dr. R. Kraynak's refutation, cannot be faulted, as it was based on Dr. Dittman's superior credentials and familiarity with his own test results. *Id.* at 135. Accordingly, our independent review of the record indicates that the ALJ's findings were based on substantial evidence, being of such rele-

---

4. The Board enunciated the correct legal standard for determining whether Wolfgang's disability was due to pneumoconiosis and acknowledged the statutory limitations placed on the scope of its review. App. at 141–42. The Board then discussed the ALJ's treatment of the medical evidence and concluded that the ALJ's decision should be affirmed since it was supported by substantial evidence. *Id.* at 142–43.

vance that "a reasonable mind might accept as adequate to support a conclusion." *Kowalchick*, 893 F.2d at 620.

We have considered all of Appellant's arguments and see no basis for granting the petition for review. The petition is therefore denied.