

2004 Decisions

**Opinions of the United
States Court of Appeals
for the Third Circuit**

10-19-2004

# Kuntz v. Beltrami Entr Inc

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-3027

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Kuntz v. Beltrami Entr Inc" (2004). *2004 Decisions.* Paper 215.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/215

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 03-3027

———

DOROTHY E. KUNTZ,
(Widow of Nicholas Kuntz, Jr.),

Petitioner

v.

BELTRAMI ENTERPRISES, INCORPORATED; TRAVELERS INSURANCE
COMPANY c/o CONSTITUTION STATE SERVICES; DIRECTOR, OWCP, UNITED
STATES DEPARTMENT OF LABOR,

Respondent

———

On Petition for Review of an Order of the Benefits Review Board
(No. 02-619 BLA)

———

Submitted under Third Circuit LAR 34.1(a)
October 1, 2004
Before: RENDELL, FUENTES, SMITH, Circuit Judges.

(Filed: October 19, 2004)

OPINION OF THE COURT

———

FUENTES, Circuit Judge.

Appellant Dorothy Kuntz ("Kuntz"), a miner's widow, filed a claim for survivor benefits under the Federal Coal Mine Health and Safety Act of 1969, as amended ("the Act"), 30 U.S.C. § 901 *et seq.*, a few years after her husband Nicholas died. The agency initially found in her favor, and her husband's employer and the employer's insurer failed to challenge those findings within the specified time. Ultimately, she was not awarded any benefits, however, because an Administrative Law Judge (ALJ) found that good cause existed to excuse the late challenge to the initial findings. On appeal, Kuntz contends that the ALJ erred in finding that good cause existed to excuse the untimely challenge to her claim. We affirm because the ALJ's findings were supported by substantial evidence.[1]

## I. Factual and Procedural Background

Kuntz' husband Nicholas died on March 30, 1993. Kuntz' procedural odyssey began when she filed a claim for survivor benefits under the Act with the Office of Workers' Compensation Programs ("OWCP"), a division of the Department of Labor.[2] OWCP issued a Notice of Claim naming Beltrami Enterprises, Inc. ("Beltrami") as the responsible employer. The Notice of Claim listed Beltrami's address as: P.O. Box 1146, Harrisburg, PA and incorrectly identified, as Beltrami's insurance company, Lackawanna Casualty Co. c/o Travelers Ins. Co., with a business address at P.O. Box 1507, One Mellon Bank Center, Pittsburgh, PA. The Notice of Claim instructed Beltrami to notify OWCP within 30 days of

---

[1]We have jurisdiction over this appeal pursuant to 33 U.S.C. § 921(c).

[2]For brevity's sake, we are not undertaking an explanation of the administrative apparatus which awards benefits to miners and survivors of miners.

receipt of the Notice of Claim whether Beltrami accepted liability as the responsible operator. The Notice of Claim included an "Operator Response Form" to be completed by Beltrami. Carol Roscher ("Roscher"), claims representative for Constitution State Services ("Constitution"), timely submitted the Operator Response Form accepting Beltrami's liability as the responsible employer and listing Constitution as the responsible insurer. Roscher listed Constitution's address as: P.O. Box 1507, Pittsburgh, PA, the same address that OWCP identified as Lackawanna's address.

On June 6, 1997, the OWCP issued a Notice of Initial Finding ("Initial Finding") concluding that Kuntz was entitled to benefits. The Initial Finding listed Beltrami's address as it appeared on the Notice of Claim. However, instead of identifying Constitution as the insurer, the Initial Finding, like the Notice of Claim, incorrectly identified Lackawanna as the insurer. Not only did the Initial Finding name the wrong insurer, it was sent to the wrong address: 16 South River Place, Wilkes-Barre, PA, rather than P.O. Box 1507, Pittsburgh, PA. The Initial Finding instructed Beltrami and Lackawanna to challenge the Initial Finding within 30 days if either of them contested the claim and indicated that an "Operator Controversion" form was enclosed. At the end of the document there was a "cc" next to four names, one of which was Constitution.

On July 15, 1997, more than a week after the challenge deadline had passed, OWCP claims examiner Ken Lubinsky documented in a call report that he and Roscher of Constitution spoke about the Initial Finding. Lubinsky noted that the Initial Finding was sent

3

to an address that differed from the insurer address listed on the Notice of Claims. According to Lubinsky's call report, Roscher represented the following in the conversation: 1) that she had never seen the Initial Finding, 2) she had not seen any of the corresponding documents, 3) she would fax over a controversion form, and 4) Constitution is a subsidiary of Travelers and they have accepted liability. Based on the conversation, Lubinsky documented that he was changing the carrier identification number to reflect Travelers. That same day, Roscher submitted the appropriate form to challenge the Initial Finding via fax. Also on July 15, 1997, Lubinsky sent Roscher a letter acknowledging receipt of the challenge to the Initial Finding. [3]

In early fall of 1997, OWCP issued an Amended Notice of Initial Finding to document that Travelers was the proper insurance carrier. The letter released Lackawanna as a party to the claim.

In a hearing before the ALJ, Kuntz argued that Constitution had waived its ability to challenge the claim because it failed to respond within 30 days after the Initial Finding was issued. On May 6, 2002, the ALJ issued a decision and order concluding that Constitution demonstrated good cause for its late challenge because it had not been properly notified of the Initial Finding. Specifically, the ALJ found that the carrier was misidentified in the

---

[3]During the month of August, a number of letters were exchanged between counsel for Beltrami/Constitution and OWCP relating to the submission of additional evidence. None of the letters were referenced in the ALJ ruling and thus we decline to discuss them here.

Initial Finding and that it had been sent to the wrong address. The ALJ also concluded that he would not presume Constitution received the Initial Finding solely based on the "cc" appearing at the end of the document. Kuntz appealed this decision to the Benefits Review Board ("the Board"). The Board determined that the ALJ did not abuse its discretion in determining that there was good cause to excuse the untimely filing of the challenge and that substantial evidence supported the ALJ's decision. The instant appeal followed.[4]

## II. Standard of Review

We limit our review of the Board's decision to a determination of whether an error of law has been committed and whether the Board has adhered to its scope of review. *Kowalchick v. Dir., Office of Workers' Compensation Programs*, 893 F.2d 615, 619 (3d Cir. 1990). The ALJ's findings of fact are affirmed by the Board if the findings are supported by substantial evidence. *Oravitz v. Director, Office of Workers' Compensation Programs*, 843 F.2d 738, 739 (3d Cir. 1988). Thus, our task is to independently review the record to determine whether the ALJ's findings are supported by substantial evidence. *Walker v. Universal Terminal & Stevedoring Corp.*, 645 F.2d 170, 172 (3d Cir. 1981). "'Substantial evidence' is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981) (internal citations omitted).

---

[4]Kuntz actually received three adverse decisions from the ALJ, all of which were appealed to the Board upon their issuance. The instant appeal involves only the May 6, 2002 ruling.

5

**III. Discussion**

Under § 725.413[5] of the 1997 Code of Federal Regulations, an operator failing to respond within 30 days after given notice of the Initial Finding waives its right to challenge the claim unless the OWCP excuses the operator's failure to respond for good cause. Federal Coal Mine Safety and Health Act, 20 C.F.R. § 725.413 (1997).[6] It is undisputed that Constitution challenged the claim later than 30 days after the Initial Finding was issued. The issue before the ALJ, and thus the issue before us, is whether there existed good cause to excuse Constitution's failure to challenge the claim within the permissible time. While both parties agree that we must determine whether the ALJ's finding of good cause was supported by substantial evidence, neither party, nor the ALJ, nor the Board has proffered any standard for determining what constitutes good cause. Although § 725.413, which sets forth the regulations for contesting the Initial Finding, does not define good cause, the regulations implementing the Act describe what constitutes good cause for excusing late filings in other contexts. For example, when excusing a delay in the timely filing of support, § 410.216 discusses the concept of good cause as follows:

(a) What constitutes "good cause." Good cause may be found for failure to file proof of support within ...the [specified] period where the [person] establishes to the

---

[5]Section 725.413 does not exist in the 2004 Code of Federal Regulations.

[6]The Initial Finding also warns:
If you fail to respond within thirty (30) days, you will be deemed to have accepted the initial finding, and this failure shall be considered a waiver of your right to contest this claim unless good cause is shown to excuse such failure. (20 CFR 725.413)

satisfaction of the Administration that such failure to file was due to:

(1) **Circumstances beyond the individual's control**, such as extended illness, mental or physical incapacity, or communication difficulties; or...

*Id*. at 410.216 (emphasis added).

As it is well-settled law that a word or phrase used in different parts of the same statute is presumed to have the same meaning throughout, *Atlantic Cleaners & Dyers, Inc. v. United States*, 286 U.S. 427, 433 (1932), we discern that there is no rational basis for having a standard for good cause in § 725.413 of the regulation that differs from the standard set forth in § 410.216 of the regulation. Hence, Constitution's untimely challenge of Kuntz' claim is excused if the reason for the delay matches one of the scenarios establishing good cause under § 410.216. The ALJ found that the Initial Finding was sent to Lackawanna rather than Constitution. He reached this conclusion from three pieces of evidence: (1) Lackawanna had been misidentified as the insurer on the Initial Finding, (2) the conversation between Roscher and Lubinsky, and 3) the substitution of Travelers for Lackawanna in the Amended Notice of Initial Finding. The ALJ also found that the "cc" appearing at the end of the Initial Finding was not sufficient proof in the instant circumstances that a copy of the Initial Finding was in fact mailed to Constitution. The ALJ offered substantial evidence that Constitution was not properly served the Initial Finding because of confusion on the part of OWCP as to where the Initial Finding was to be sent. This qualifies as a communication difficulty beyond Constitution's control, one of the scenarios establishing good cause under the regulation. *See* 20 CFR § 410.216(a)(1). Because the Board correctly determined that

7

substantial evidence supported the ALJ's finding that good cause excused Constitution's late challenge, we affirm.

We have considered all of the arguments advanced by the parties and conclude that they are without merit and require no further discussion.  Accordingly, the order of the Benefits Review Board will be affirmed.

———